IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**ALFRED JOHNSON,**　　　　　　　　　　CASE NO. 3:20 CV 497

　　　Plaintiff,

　　　v.　　　　　　　　　　　　　　　　JUDGE JAMES R. KNEPP II

**CITY OF TOLEDO, et al.,**

　　　　　　　　　　　　　　　　　　　**MEMORANDUM OPINION AND**
　　　Defendants.　　　　　　　　　　　**ORDER**

## INTRODUCTION

Plaintiff Alfred Johnson brings this civil rights case against the City of Toledo, the Toledo Police Department, and Toledo Police Officer Eric Macek, and Toledo Police Officer John Doe. (Doc. 1). Currently pending before the Court is Defendants' Motion for Summary Judgment. (Doc. 28). Plaintiff opposes (Doc. 29), and Defendants reply (Doc. 31). Also pending is Plaintiff's Motion for Leave to File Exhibits (Doc. 32). Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons discussed below, the Court grants Plaintiff's Motion for Leave to File, grants in part Defendants' Motion for Summary Judgment as to the federal claims, and declines to exercise supplemental jurisdiction over the state law claims.

## BACKGROUND

This case arises out of Plaintiff's March 5, 2019, arrest by Officer Macek and subsequent related charges. Viewed in the light most favorable to Plaintiff, the available evidence demonstrates the following facts.

Body camera videos from the day in question show Plaintiff riding by a police car on his bicycle.[1] One officer exits the vehicle and says, "Stop! Get up to the front of the car. Get to the front of the car right now!" The officer then approaches Plaintiff and takes him to the ground. The video is completely obscured at this point (and for the next several minutes), but someone (presumably Plaintiff) can be heard saying repeatedly, "That ain't no gun!". The officer then repeatedly yells, "Stop!" and tells Plaintiff to put his hands behind his back. Plaintiff says something indiscernible. The conversation continues, some of it muffled, with the officer asking Plaintiff why he did not stop; Plaintiff responds that he was about to. An officer also says, "Put your foot down, if you kick me again, you're gonna get tased." Plaintiff says, "Now you're hurting me, man."

Officer Macek submits an affidavit attesting that on the date in question, he was on street patrol "when a citizen pointed out the Plaintiff who was wa[]ving a gun at residents while riding his bicycle on the sidewalk." (Doc. 28-1, at ¶ 6). He asserts that when he reached Plaintiff, the police identified themselves and "ordered him to stop"; instead, Plaintiff "just looked at us and then tried to speed away on his bicycle." *Id.* at ¶ 7. Macek says Plaintiff dropped his bicycle and began to run despite officers' commands to stop. *Id.* at ¶ 8. Officers gave chase, caught Plaintiff, and retrieved the gun. *Id.* at ¶ 9. The gun turned out to be a "starter pistol"; police booked the pistol along with one spent cartridge and four unspent cartridges. *Id.* at ¶ 12.

Plaintiff was charged in Toledo Municipal Court with inducing panic in violation of Ohio Rev. Code § 2917.31, resisting arrest in violation of Ohio Rev. Code § 2921.33, and obstructing official business in violation of § 2921.31(A). (Doc. 29-1, at 1-3) (Complaints, *City of Toledo v.*

---

1. The City submitted four body camera videos, which it submits were from Officers Eric Macek and A. Howard, from the date of the incident. *See* Docs. 26, 27 (manual filing).

*Johnson*, No. CRB-19-02598 (Tol. Mun. Ct.)). The inducing panic charge was later dismissed and not refiled. CRB-19-02598-0103. The resisting arrest and obstructing official business charges were also dismissed, but later refiled in July 2020. (Doc. 29-1, at 4-5) (*City of Toledo v. Johnson*, Nos. CRB-20-6136; CRB-20-5942 (Tol. Mun. Ct.). These charges remain pending.

The March 5, 2019, complaint asserts "an unknown citizen motioned to [police] that [Plaintiff], who was riding his bike, may have a gun. [Police] stopped the listed suspect who [w]as holding a black starter pistol in his right hand." (Doc. 29-1, at 1). Both the May 5, 2019, and July 24, 2020, complaints state officers "ordered [Plaintiff] to stop because this unit was being flagged down by an unknown citizen who motioned that the suspect may have a gun." *Id.* at 3, 4. Both the March 2019 and July 2020 complaints state Plaintiff "held his arms underneath his body and pulled away", as well as that he was "told multiple times to stop resisting." *Id.* at 2, 5.[2]

Plaintiff filed his Complaint in the instant case on March 4, 2020, against the City of Toledo, the Toledo Police Department, Officer Eric Macek and Officer John Doe. (Doc. 1). He brings claims under 42 U.S.C. §§ 1983, 1985, and 1988 of false arrest and excessive force and state law claims of unlawful imprisonment, assault and battery, intentional infliction of emotional

---

2. Plaintiff attached these Complaints to his opposition brief. *See* Doc. 29-1. He then filed a motion for leave to file them, arguing they are admissible as public records under Federal Evidence Rule 803(8). (Doc. 32). Defendants did not respond to this motion. The Court grants Plaintiff's motion. The criminal complaints (sworn by Officer Macek) are admissible under the public records exception to hearsay, Fed. R. Evid. 803(8), or a statement of a party opponent, Fed. R. Evid. 801(d). Here, the criminal complaint containing factual findings based on Officer Macek's personal observations is being used in a civil action. Plaintiff has not provided any evidence indicating a lack of trustworthiness. *Cf. Jones v. Sandusky Cnty.*, 652 F. App'x 348, 356 (6th Cir. 2016) (holding that a district court's "[w]holesale exclusion" of an investigative police report on hearsay grounds was error because the report fell squarely within Rule 803(8)'s exception to the hearsay rule, "even those portions of the report consisting of conclusions or opinions formed as a result of a factual investigation").

distress, negligent infliction of emotional distress, malicious prosecution, and negligence. He seeks compensatory and punitive damages.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

## DISCUSSION

Defendants move for summary judgment on all of Plaintiff's claims. They assert he has "offered no evidence to support any of his claims" and that Defendants are immune under 42 U.S.C. § 1983 and Ohio Revised Code §§ 2744.02(B) and 2744.03(A)(6). Plaintiff responds that

"the material facts in this case demonstrate that the Defendants, under color of law, violated Mr. Johnson's constitutional rights to be free from unreasonable searches and seizures, used excessive force, intentionally and negligently injured him, and are not entitled to statutory immunity for their malicious and unlawful conduct . . . and their motion for summary judgment should be denied". (Doc. 29, at 1-2). For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment on Plaintiff's federal claims and declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

Federal Claims

Plaintiff brings claims for false arrest and excessive force under 42 U.S.C. § 1983 against both individual officers, the City of Toledo, and the City of Toledo Police Department. (Doc. 1, at 12-13, 14-15).

Defendants argue they are protected from suit under the doctrine of qualified immunity. (Doc. 28, at 5,7-8). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense; once a defendant raises it, the burden shifts to the plaintiff to demonstrate: (1) the defendant's acts violated a constitutional right; and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct. *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014). The unlawfulness of the officer's conduct must be apparent in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Cameron v. Seitz*, 38 F.3d 264, 272 (6th Cir. 1994) (citing *Mumford v. Zieba*, 4 F.3d 429, 432 (6th Cir.1993)).

5

*Toledo Police Department*

At the outset, the Court notes that the police department is not *sui juris*, meaning it is not a legal entity under Ohio law that can sue or be sued. *See Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) (finding that "under Ohio law, a county sheriff's office is not a legal entity that is capable of being sued"); *see also Hill v. City of Toledo*, 2020 WL 6701988, at *4 (N.D. Ohio) (finding the Toledo Police Department is not *sui juris*); *Nash v. Cuyahoga Metro. Hous. Auth., et al.*, 2008 WL 495616, at *2 (N.D. Ohio) (police departments "are merely sub-units of the municipalities they serve" and cannot separately sue or be sued). Consequently, Plaintiff's claims against the Toledo Police Department fail as a matter of law.

*False Arrest*

Plaintiff brings a false arrest claim against Defendants. (Doc. 1, at 12-13). Defendants contend they are entitled to summary judgment on this claim because the evidence demonstrates (1) probable cause existed for the arrest and (2) the officers are entitled to qualified immunity. (Doc. 28, at 7-8). Plaintiff argues officers had no probable cause to arrest Plaintiff and no reasonable suspicion to stop him. (Doc. 29, at 6-8). He argues merely possessing a suspected firearm is not a crime and claims Officer Macek's affidavit four years after the arrest is nothing more than a concerted effort to avoid liability. *Id.* at 6. Specifically, he contends the criminal charges following the incident in question never mention Plaintiff was waving the gun at nearby residents. *Id.* at 4-5. Plaintiff also argues the failure to refile the inducing panic charge proves there was no probable cause for his arrest. *Id.* at 7-8. Defendants reply that Plaintiff has not provided any evidence to contradict their arguments, only conclusory statements in his brief. (Doc. 31, at 7-8).

6

The Fourth Amendment prohibits "unreasonable" "seizures." U.S. Const. amend. IV. Officers need "probable cause to believe that a criminal offense has been or is being committed" to support a warrantless arrest. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "A false arrest claim under federal law requires a plaintiff to prove that "the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005); *see also Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009). The existence of probable cause as to one charge bars a false arrest claim, even if the crime for which probable cause exists is not subjectively why the officer made the arrest. "That is to say, [the officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck*, 543 U.S. at 153. Probable cause exists where there is "a 'fair probability' that the individual to be arrested has either committed or intends to commit a crime." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citing *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001)). Probable cause "is not a high bar" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018).

Additionally, while an arrest must be supported by probable cause, police officers are also permitted to make a reasonable investigatory stop, even in the absence of probable cause, as set forth by the Supreme Court in *Terry v. Ohio*. 392 U.S. 1, 22 (1968). A police officer may conduct an investigatory search and seizure so long as he is able to point to specific and articulable facts which give rise to a reasonable suspicion of criminal activity. *Id.* at 21.

7

Plaintiff's first argument is in essence a challenge to Officer Macek's credibility.[3] He asserts the criminal complaints do not reflect Plaintiff was "waving" a gun and implies Officer Macek has changed his story. (Doc. 29, at 4-5). But the Court does not resolve questions of credibility on a motion for summary judgment. *Regents v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014). Officer Macek's sworn complaints state a "citizen motioned" to officers that Plaintiff "may have a gun"; when officers stopped Plaintiff, he "[w]as holding a black starter pistol in his right hand" (Doc. 28-1, at 1); and the officers were "flagged down by an unknown citizen who motioned that the suspect may have a gun." (Doc. 29-1, at 3, 4).

These statements do not contradict Officer Macek's sworn affidavit, which states the citizen "pointed out the Plaintiff who was wa[]ving a gun at residents while riding his bicycle on the sidewalk." (Doc. 28-1, at ¶ 6). Under Ohio law, "inducing panic" applies to circulating a false warning of an impending "catastrophe," threatening to commit an "offense of violence," or committing an offense with "reckless disregard of the likelihood" that it will cause "serious public inconvenience or alarm." Ohio Rev. Code § 2917.31. Officer Macek's sworn affidavit asserting a citizen pointed out Plaintiff who was waving a gun is sufficient to establish probable cause that Plaintiff violated Ohio Rev. Code § 2917.31. On the facts presented, the Court finds the officers had probable cause to arrest Plaintiff. That is, the evidence shows there was "a 'fair probability'

---

3. Conclusory allegations, speculation, and unsubstantiated assertions are not evidence and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Furthermore, on summary judgment "[t]he court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter." *Regents v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 250–51.

that the individual to be arrested has either committed or intends to commit a crime." *Fridley*, 291 F.3d at 872 (citing *Northrop*, 265 F.3d at 379).

Plaintiff's second argument, that the inducing panic charge was not refiled and therefore probable cause for arrest was lacking, is not well-taken. A decision not to prosecute is not relevant as to whether probable cause existed for the arrest. Probable cause to make an arrest exists if, at the moment of the arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (quoting *Donovan v. Thames*, 105 F.3d 291, 298 (6th Cir. 1997)). "[T]he decision of whether or not to prosecute and what charge to file . . . generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (footnote omitted). Additionally, "proof beyond a reasonable doubt demands more of the prosecution than probable cause does." *Bradley v. Reno*, 749 F.3d 553, 556 (6th Cir. 2014).

But even assuming *arguendo* Defendant officers did not have probable cause at the outset to arrest Plaintiff on inducing panic, the information they received was certainly enough to warrant a *Terry* stop under the reasonable suspicion standard. Under Terry, a police officer may conduct an investigatory stop so long as he is able to point to specific and articulable facts which give rise to a reasonable suspicion of criminal activity. *Terry*, 392 U.S. at 21. And officers may use a certain amount of force to effectuate such a *Terry* stop. *See, e.g.*, *United States v. Dotson*, 49 F.3d 227, 230 (6th Cir. 1995) (ruling that, when officer grabbed suspect as the suspect began to run, the officer's "effort to restrain Dotson was an appropriate degree of force to effectuate the *Terry* stop"). Further, in conjunction with a *Terry* stop, officers may conduct a *Terry* frisk, which is "narrowly drawn" to "permit a reasonable search for weapons for the protection of the police officer, where

he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Terry*, 392 U.S. at 27. After being flagged down by the citizen, officers attempted to stop Plaintiff to investigate, but he began to run. (Doc. 28, at ¶ 8). Officers, armed with the knowledge that Plaintiff may have a gun and was attempting to flee, chased and apprehended Plaintiff. *Id.* at ¶ 9. Even if the officers started with only reasonable suspicion for a *Terry* stop, by the time they seized Plaintiff, that reasonable suspicion had ripened into probable cause. *See Dotson,* 49 F.3d at 230 (noting " [the plaintiff's] attempt to flee ripened [the officer's] reasonable suspicion into probable cause to arrest [the plaintiff]."). At that point, officers had the citizen's report and actions in flagging down the officers, Plaintiff's attempt to flee, and they discovered the starter pistol in his hand. Additionally, under Ohio law, an individual can be arrested for resisting arrest if they "recklessly or by force . . . resist or interfere with a lawful arrest of the person or another." Ohio Rev. Code § 2921.33. Officer Macek's criminal complaint states Plaintiff "was told multiple times to stop resisting" and "held his arms underneath his body". (Doc. 29-1, at 2, 5). Plaintiff has presented no evidence to the contrary. On this record, the evidence is sufficient to establish probable cause that Plaintiff violated Ohio Rev. Code § 2921.33, resisting arrest.

On the facts provided, Plaintiff has not established the officers' actions as apparently unlawful. The burden is on Plaintiff to show (1) a constitutional violation and (2) law showing that right is clearly established. Because he has not done so, Defendants are entitled to qualified immunity. *T.S.*, 742 F.3d at 635. "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Cameron*, 38 F.3d at 272 (citing *Mumford*, 4 F.3d at 432). Therefore, the Court finds Plaintiff has not established a genuine issue of material fact

10

regarding whether the officers committed a violation of a clearly established right, and as such, they are entitled to qualified immunity and summary judgment.

Plaintiff argues the Sixth Circuit's decision in *Northrup v. City of Toledo Police Department*, 785 F.3d 1128 (6th Cir. 2015), dictates the opposite conclusion. The Court disagrees. In *Northrup*, an individual was walking with a gun holstered on his hip. *Id.* at 1130. A passing motorcyclist called 911 to report "'a guy walking down the street' with his dog was 'carrying a gun out in the open.'" *Id.* An officer responded, with his hand on his gun, immediately demanded the individual carrying the gun to put his hands up and announced that if the individual "go[es] for the weapon, he's going to shoot." *Id.* The individual asked several questions; the officer refused to answer, then took the individual's gun from its holster and arrested the individual on a charge of inducing panic under Ohio Revised Code § 2917.31. *Id.* In holding the officer lacked reasonable suspicion to stop and frisk the individual, the Sixth Circuit explained:

> In today's case, Officer Bright relies on two "specific and articulable facts": Northrup's open possession of a firearm and the 911 call about what Northrup was doing. The Fourth Amendment no doubt permitted Bright to approach Northrup and to ask him questions. But that is not what he did. He relied on these facts to stop Northrup, disarm him, and handcuff him. Ohio law permits the open carry of firearms, Ohio Rev.Code § 9.68(C)(1), and thus permitted Northrup to do exactly what he was doing. While the dispatcher and motorcyclist may not have known the details of Ohio's open-carry firearm law, the police officer had no basis for such uncertainty. * * *
>
> Clearly established law required Bright to point to evidence that Northrup may have been "armed *and dangerous.*" *Sibron v. New York,* 392 U.S. 40, 64, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (emphasis added). Yet all he ever saw was that Northrup was armed—and legally so. To allow stops in this setting "would effectively eliminate Fourth Amendment protections for lawfully armed persons." *United States v. King,* 990 F.2d 1552, 1559 (10th Cir.1993); *accord United States v. Ubiles,* 224 F.3d 213, 218 (3d Cir.2000); *United States v. Black,* 707 F.3d 531, 540 (4th Cir.2013); *United States v. Roch,* 5 F.3d 894, 899 (5th Cir.1993).

*Id.* at 1131-32.

*Northrup* is distinguishable from the present case. It is true that one may openly carry a firearm in Ohio. Ohio Rev. Code § 9.68(C)(1) and § 2923.12. But, unlike in *Northrup*, officers did not stop Plaintiff based solely on information that he was carrying a firearm in the open. First, Officer Macek's affidavit states "a citizen pointed out the Plaintiff who was wa[]ving a gun at residents while riding his bicycle on the sidewalk." (Doc. 28-1, at ¶ 6). Information that a person is waving a gun at other individuals is different than the information provided in *Northrup* that a person was "carrying a gun out in the open." The Court finds the differing facts here support reasonable suspicion that Plaintiff was involved in criminal activity. Second, unlike the plaintiff in Northrup, Plaintiff here attempted to flee when asked to stop by the officers. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ( "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion.").

Plaintiff fails to present evidence to create a genuine dispute of material fact regarding his § 1983 false arrest claim. The individual officer Defendants are therefore entitled to summary judgment on this claim.

*Excessive Force*

Plaintiff also brings an excessive force claim against the individual Defendant officers. (Doc. 1, at 14-15). This claim is grounded in the same argument as his false arrest claim: he contends no probable cause existed for an arrest; therefore, the arrest was unlawful, and any amount of force was excessive. Defendants assert (1) probable cause existed for the arrest, and (2) even if Plaintiff could establish a constitutional violation of excessive force, the officers are entitled to qualified immunity. As discussed above, the Court finds the officers had probable cause to arrest Plaintiff. The officers are entitled to qualified immunity as set forth below.

The Court analyzes claims that an officer used excessive force when arresting a person "under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it", and "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene." *Id.* at 396. Factors relevant to this inquiry include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. Additionally, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

The first question for qualified immunity purposes is whether there was a constitutional violation. Plaintiff asserts the officers used excessive force in detaining/arresting him. In his Complaint, Plaintiff asserts the officers "handcuffed [him] unnecessarily and unreasonably tight and painfully restrained his arms behind his back thereby causing injury" and "forcefully manipulated his arms". (Doc. 1, at ¶¶ 30-31; 80-82). Because Defendants raised qualified immunity, the burden shifts to Plaintiff to prove Defendants are not so entitled. *T.S.*, 742 F.3d at 635. However, Plaintiff has not submitted any evidence to support his excessive force claim. Plaintiff "cannot merely rely on the allegations in [his] complaint to defeat summary judgment." *Tullis v. UMB Bank*, *N.A.*, 423 F. App'x 567, 570 (6th Cir. 2011) (citation omitted). Furthermore,

13

Plaintiff has not submitted any evidence contradicting Officer Macek's affidavit, which stated Plaintiff resisted arrest. (Doc. 28-1, at ¶¶ 7-10). In fact, the only evidence Plaintiff has submitted – the criminal complaints – factually supports resistance. *See* Doc. 29-1, at 2 ("The suspect held his arms underneath his body and pulled away[.]"). The criminal complaints further indicate that officers "used joint manipulation and head control techniques to place the suspect's hands behind his back to get him into custody." *Id.* at 2. Plaintiff's sole argument that no force was permitted – like the false arrest claim – fails because there was probable cause for an arrest. An officer making an investigative stop or arrest has "the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396; *see also Rudlaff v. Gillispie*, 791 F.3d 638, 643 (6th Cir. 2015). ("When a person resists arrest—say, by swinging his arms in the officer's direction, balling up, and refusing to comply with verbal commands—the officers can use the amount of force necessary to ensure submission.").

Therefore, the Court finds Plaintiff has not established a genuine issue of material fact as to whether the officers committed a constitutional violation, and as such, they are entitled to qualified immunity.

*Monell Claims*

Plaintiff's Complaint also asserts claims for municipal liability against the City of Toledo. (Doc. 1, at ¶¶ 19, 21) (asserting the City of Toledo has a "custom and practice" that infringes on the civil rights of the public, including Plaintiff and that the City failed to properly train officers). Defendant moves for summary judgment on any such claim, asserting it is immune from such a claim because (1) Plaintiff's constitutional rights were not violated and (2) Plaintiff has not established the required "direct causal link" between any official action/policy. That is, Plaintiff has not shown the "deliberate conduct" of the City was the "moving force behind the alleged

14

injury." (Doc. 28, at 8) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). The Court agrees with Defendants.

Although § 1983 may be exercised against a municipality, "liability attaches only under a narrow set of circumstances[,]" and a municipality may not be held liable solely for employing a tortfeasor. *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019). "Instead, a plaintiff must show that 'through its deliberate conduct, the municipality was the moving force behind the injury alleged.'" *Id.* (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013)). A plaintiff must establish the municipality had a "'policy or custom' that caused the violation of his rights." *Id.* (quoting *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978)). A plaintiff may demonstrate that a city had such a policy or custom in four ways: "the plaintiff may prove '(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.'" *Id.* (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

The language of Plaintiff's Complaint suggests Plaintiff intends to rely on a "failure to train" theory of liability. *See* Doc. 1, at ¶¶ 12-21. However, Defendants correctly assert Plaintiff does not establish such a claim under any of the above methods. *See* Doc. 28, at 8-9.

First, "there is no liability under *Monell* without an underlying constitutional violation." *Zucker v. City of Farmington Hills*, 643 F. App'x 555, 570 (6th Cir. 2014) (citing *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[None] of our cases authorize [ ] the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."). Second, Plaintiff has failed to establish any alleged

15

deprivation was the result of a City policy or custom. *See Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) ("A plaintiff asserting a section 1983 claim on the basis of a municipal custom or policy must 'identify the policy, connect the policy to the [municipal actor] itself and show that the particular injury was incurred because of the execution of that policy.'" (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.1993)). As such, the City of Toledo is entitled to summary judgment on all of Plaintiff's municipal liability claims.

*Conspiracy Claims*

Plaintiff's Complaint also asserts conspiracy claims under 42 U.S.C. § 1983 and §1985. (Doc. 1, at 14-15). In their motion, Defendants argue "Plaintiff has not presented any facts or evidence of a violation of his civil rights or of a conspiracy to violate his civil rights." (Doc. 28, at 5). Plaintiff's opposition brief does not point to evidence in support of such a claim (or even mention such a claim). *See* Doc. 29. He has thus abandoned any conspiracy claim. *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."). But the Sixth Circuit has made clear that "a district court may *not* use a party's failure to respond (in whole or in part) as a reason for granting summary judgment." *Briggs v. Univ. of Detroit-Mercy*, 611 F. App'x 865, 870 (6th Cir. 2015) (emphasis added); *see also FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014). This is because the burden at summary judgment is on the *movant* to establish the nonexistence of a material fact. *E.M.A. Nationwide, Inc.*, 767 F.3d at 630. Even if unopposed, the Court "must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *Id.*

16

Plaintiff has simply presented no evidence to satisfy the elements of such a claim. "To state a claim under § 1985(3), a plaintiff must allege: '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (quoting *United Bhd. of C & J v. Scott*, 463 U.S. 825, 828–29 (1983)). Further, precedent requires the conspiracy be founded on "class-based invidious discrimination." *Smith v. Martin*, 542 F.2d 688, 690 (6th Cir. 1976); *see also Volunteer Med. Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 223 (6th Cir. 1991) ("*Griffin v. Breckenridge*, 403 U.S. 88, 102, ... (1970), established that a necessary element of § 1985(3) claim is the existence of 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action'."). Plaintiff has pointed to no evidence to establish such a claim.

Similarly, any conspiracy claim under § 1983 requires facts showing "'(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive [him] of [his] constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). Plaintiff has pointed to no such evidence.

42 U.S.C. § 1988 provides for the provision of attorney's fees in successful claims. As Defendants are entitled to summary judgment on each of Plaintiff's federal claims, Plaintiff is not entitled to such fees.

17

State Law Claims

Remaining are Plaintiff's state law claims for false arrest and false imprisonment, assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and malicious prosecution. (Doc. 1, at 12-13, 15-22).

Supplemental jurisdiction is a doctrine of discretion, not of right. *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). Refusal to exercise supplemental jurisdiction is reviewed for an abuse of discretion. *Hankins v. The Gap, Inc.*, 84 F.3d 797, 802 (6th Cir. 1996). Supplemental jurisdiction exists for "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).2 "Such supplemental jurisdiction does not disappear when the federal claim that gave rise to original jurisdiction in the first place is dismissed." *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012) (citing *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 129 (2009)). Nonetheless, the Court may decline to exercise its supplemental jurisdiction when the original jurisdiction claims have been dismissed. 28 U.S.C. § 1367(c)(3). "Certainly, if the federal claims are dismissed before trial ... the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The Court should balance judicial economy and avoidance of duplicative litigation against needlessly deciding state law issues. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 211 (6th Cir. 2004).

Plaintiff has provided no argument in favor of the Court exercising supplemental jurisdiction in this circumstance. Nor has the Court identified any reason the normal rule should not apply. Therefore, with summary judgment granted as to all of Plaintiffs' federal claims, all remaining claims, sounding in state law, are dismissed without prejudice.

18

**CONCLUSION**

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiff's Motion for Leave (Doc. 32) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Defendants' Motion for Summary Judgment (Doc. 28), is GRANTED IN PART as to the federal claims; and it is

FURTHER ORDERED that the Court declines to exercise supplemental jurisdiction over the remaining state law claims and those claims be, and the same hereby are, DISMISSED WITHOUT PREJUDICE.

 s/ *James R. Knepp II*  
UNITED STATES DISTRICT JUDGE